UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA M. BERG,

                        Plaintiff,

      v.                                         **DECISION AND ORDER**
                                                    05-CV-862S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

      1.      In this case, Plaintiff Debra M. Berg challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since September 12, 2001, due to a back and neck condition. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on October 25, 2002. Her application was denied initially and upon reconsideration. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Ellen M. Koldeway on July 14, 2004. Plaintiff and an impartial vocational expert testified at the hearing. The ALJ considered the case *de novo*, and on December 20, 2004, issued a decision denying Plaintiff's application for benefits. On September 21, 2005, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on December 7, 2005, challenging Defendant's final decision.[1]

      3.      On July 6, 2006, and July 24, 2006, respectively, Defendant and Plaintiff moved for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

---

[1]The ALJ's December 20, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Procedure. For the following reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Motion seeking the same is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 25);[2] (2) Plaintiff's post cervical discectomy and fusion, right traumatic brachial plexopathy and status post neurolysis and neuroplasty right brachial plexus, and post traumatic myofascial pain syndrome constitute "severe" impairments (R. at 21, 26); (3) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in the regulations (R. at 26); (4) Plaintiff retains the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, stand or walk for up to six hours in an eight hour work day and to frequently use her upper extremities for pushing, pulling, and fine finger motor movements (R. at 26); and (5) Plaintiff was able to perform her past relevant work as an administrative assistant, as that work is generally performed in the national economy. (R. at 25). Ultimately, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time through the date of her decision, December 20, 2004.

10.  Plaintiff's first challenge to the ALJ's decision is that she improperly rejected

---

[2] Citations to the underlying administrative record are designated as "R."

the restrictive assessments of Dr. Gregg DeNicola and Dr. Israel Chambi.³  In her decision, the ALJ made reference to specific medical records including: (1) Dr. DeNicola's August medical questionnaire wherein he diagnosed Plaintiff with degenerative disc disease and assessed that she could lift no more than five pounds and could sit, stand, and/or walk for no more than one hour in an eight hour workday; (R. at 338, 340-41) and (2) Dr. Chiambi's August 21, 2003 letter in which he opined that Plaintiff was permanently disabled. (R. at 366).  In rendering her decision, the ALJ found that Dr. DeNicola's restrictive assessment was belied by other objective medical evidence and Plaintiff's own reports regarding her physical capabilities. (R. at 24). Likewise, the ALJ concluded that Dr. Chiambi's medical findings "do not support a finding of total disability." (R. at 24).  Plaintiff contends that the ALJ violated the "treating physician's rule" by failing to afford proper weight to her doctors' restrictive opinions.⁴

11.     According to the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger

---

³Plaintiff also argues that the ALJ mischaracterized Dr. George El-Khoury's medical records by stating that they demonstrated that Plaintiff's symptoms were improving with treatment. (R. at 24). This Court does not agree. As Plaintiff concedes, Dr. El-Khoury's records reflect that she was benefitting from injections, (R. at 291, 312) and that her TENS unit relieved her pain. (R. at 314). Under the circumstances, this Court finds that the ALJ did not mischaracterize Dr. El-Khoury's medical records.

In addition, Plaintiff contends that the ALJ improperly rejected the assessment of Dr. Richard S. Gluckman, a consultative neurologist who apparently examined Plaintiff once at the request of her attorney. (R. at 355-59). This Court does not agree. As an initial matter, an ALJ is not obligated to give controlling weight or even extra weight to a nontreating medical source. See 20 C.F.R. § 404.1527. Moreover, Dr. Gluckman's opinion that Plaintiff was permanently disabled is unsupported by his objective medical findings that: (1) her gait and station were normal; and (2) she could lift twenty pounds occasionally and ten pounds frequently. (R. at 350, 357).

⁴ "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Having reviewed the entire record, this Court detects no reversible error in the ALJ's treatment of Drs. DeNicola and Chiambi's conclusions.

With respect to Dr. DeNicola's restrictive evaluation, the record reflects that it is inconsistent with Plaintiff's own subjective reports and the assessments of Dr. Warren David Yu, the consulting orthopedic surgeon, Dr. Gluckman, and the two state agency medical consultants.[5] For example, contrary to Dr. DeNicola's conclusion that Plaintiff could never lift more than 5 pounds, Plaintiff testified at the hearing that she could lift ten pounds. (R. at 341, 468). In addition, Plaintiff advised Dr. Yu that she did not have any difficulty walking, contrary to Dr. DeNicola's conclusion that walking caused her pain. (R. at 196, 340). Moreover, Drs. Yu and Gluckman, and the two state agency medical consultants all concluded that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (R. at 199, 201, 206,[6] 350). In weighing the doctors' respective opinions, the ALJ noted that Dr. Yu, as an orthopedic surgeon, was better qualified to render an objective opinion as to Plaintiff's musculoskeletal restrictions than Dr. DeNicola, a family physician and Plaintiff's former employer. (R. at 24).

With respect to Dr. Chiambi's opinion that Plaintiff was permanently disabled, this Court agrees that it is unsupported by his objective medical findings and is inconsistent with his own medical conclusions and with those of the consulting doctors. For example,

---

[5]State agency medical consultants are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act, and their opinions constitute expert opinion evidence which can be given weight if supported by medical evidence in the record, as in this case. See 20 C.F.R. § 404.1527(f)(2)(i). Under the regulations, the opinion of a state agency medical consultant may override that of a treating physician. Shisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

[6]This particular record reflects that the second state agency medical consultant affirmed the prior consultant's assessment of Plaintiff's abilities, including her ability to lift.

6

following Plaintiff's brachial plexus decompression surgery, Dr. Chiambi reported that Plaintiff's condition had improved, that her gait was normal, and she had essentially no motor or sensory deficits. (R. at 179, 181, 365, 377). These objective medical findings do not support a conclusion of disability. Dr. Yu's evaluation further refutes Chiambi's conclusion that Plaintiff was permanently disabled. On January 19, 2003, Dr. Yu observed that Plaintiff exhibited a normal gait, retained full range of motion in her thoratic and lumbar spines, tested negative bilaterally on straight leg raising, and demonstrated full range of motion, full muscle strength, and normal sensations and reflexes in her upper and lower extremities. (R. at 197-98). As previously noted herein, Dr. Gluckman and the two state agency medical consultants all agreed that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, which further undermines Dr. Chiambi's conclusion that she was permanently disabled. (R. at 201, 206, 350, 357).

Notwithstanding the foregoing inconsistencies, the ALJ was not obligated to adopt Dr. Chiambi's conclusory opinion that Plaintiff was permanently disabled. It is well established that a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine that the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e) (stating that certain findings, including the ultimate finding of whether a claimant is disabled, are reserved to the Commissioner). For the foregoing reasons, this Court finds that the ALJ's treatment of Drs. DeNicola and Chiambi's conclusions regarding her capabilities was appropriate.

11.     Plaintiff next argues that the ALJ improperly relied on the testimony of the vocational expert regarding whether she could perform her past work as a administrative assistant. Specifically, Plaintiff contends that the hypothetical question posed to the vocational expert did not accurately reflect Plaintiff's impairments and therefore, the

7

vocational expert's answer was not determinative of whether she could perform a particular job. As set forth in her opinion, the ALJ concluded that Plaintiff retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand and/or walk for up to six hours during the course of an eight hour workday, and to frequently use her upper extremities for pushing, pulling, and fine finger movement. (R. at 25, 26). Contrary to Plaintiff's contention, the ALJ's residual functional capacity assessment was not contrary to the record as a whole, but was supported by the objective medical findings of Drs. Yu and Gluckman and the two state agency medical consultants, as well as Plaintiff's own subjective reports, as previously set forth herein.

The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, educational experience, past relevant work experience, and residual functional capacity, who suffers from disorders of the back, discogenic degenerative late affects of injuries to the nervous system, and cervical pain with intermittent radiculopathy. (R. at 483). In response, the vocational expert opined that such a hypothetical individual could perform Plaintiff's past relevant work as it is generally performed in the national economy.[7] (R. at 484). It is axiomatic that the Commissioner is entitled to rely upon the testimony of a vocational expert to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy. 20 C.F.R. § 404.1566(e). Under the circumstances, this Court finds that the ALJ's hypothetical question accurately reflected Plaintiff's impairments and residual functional capacity and therefore, that she appropriately relied on the vocational expert's opinion that Plaintiff could perform her past work as an administrative assistant at a sedentary level.

---

[7]The vocational expert testified that the Dictionary of Occupational Titles classifies the job of administrative assistant as skilled sedentary work, but in her prior employment, Plaintiff performed the job at the medium exertional level. (R. at 25).

12. Plaintiff's final argument is that the ALJ erred when she failed to credit her allegations regarding the severity of her pain, symptoms, and functional limitations. However, as the ALJ found, the totality of the objective medical evidence does not corroborate Plaintiff's subjective complaints of pain and debilitation to the extent alleged. For example, in her Prehearing Memorandum, Plaintiff indicated that she took Vicodin two times a day to relieve the disabling pain in her neck and back. (R. at 104). However, as the ALJ noted, Plaintiff's pharmaceutical records from July 18, 2004, reflected that she had not been dispensed enough Vicodin for that to be the case. (R. at 22).

Because Plaintiff's alleged symptoms suggested a greater restriction than could be demonstrated by the objective medical evidence, the ALJ properly considered other factors, such as Plaintiff's daily activities, the effectiveness of her medication and other treatments, and the side effects of her medication. 20 C.F.R. § 404.1529(c)(3). At the hearing, Plaintiff testified that she performed small house chores, such as folding laundry, drove her daughter to school, and drove herself to her medical appointments. (R. at 459, 475). Regarding Plaintiff's medication and treatments, Dr. El-Khoury administered cervical facet injections and epidural blocks to Plaintiff and thereafter discharged her. (R. at 263, 271, 278, 286, 293, 305). Apparently, these treatments relieved Plaintiff's pain because according to discharge criteria at Dr. El-Khoury's medical center, Plaintiff was alert and oriented, able to ambulate with minimal dizziness, and had minimal pain following a facet injection on March 27, 2002. (R. at 306). With respect to side effects, there is no evidence in the record that Plaintiff's pain medications made her sleepy or drowsy, as she alleged. (R. at 474). As the Second Circuit held in Dumas v. Schwieker, 712 F.2d 1545, 1553 (2d Cir. 1983), an ALJ is "entitled to rely not only what the record says, but also on what it does not say."

Given the lack of corroborating medical evidence, the ALJ properly concluded that Plaintiff's "assertions as to the extent, intensity, duration and functionally limiting effects of her impairments and associated symptomatology are not credible due to significant inconsistencies with the record as a whole." (R. at 22). Under the circumstances, this Court finds that the ALJ sufficiently articulated her rationale for concluding that Plaintiff's allegations were not entirely credible.

13.   After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions based on that evidence. It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering her decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error in the ALJ's decision and further finding that his decision is supported by substantial evidence, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   February 27, 2007
         Buffalo, New York

           –                    /s/William M. Skretny
                                 WILLIAM M. SKRETNY
                                 United States District Judge